GULOTTA, Judge
(dissenting).
I dissent from that part of the majority opinion that reduces the amount of plaintiff’s award based on the majority conclusion that plaintiff failed to prove the existence of an osteoarthritic condition of the knee. In my opinion, the majority invades the province of the trier of fact when it substitutes its reasonable evaluation of the medical evidence for the reasonable evaluation of the trial judge. The admonition to appellate courts is clearly set out in Canter v. Koehring Company, La., 283 So.2d 716 (1973), where the Supreme Court came across loud and clear with the following language:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
*128 The trial judge concluded in the instant case that the accident caused an aggravation of an osteoarthritic condition of the knee. This is a credibility determination by the trial judge. The record supports such a conclusion.
Dr. E. J. Dabezies saw plaintiff on November 13, 1973, and recognized that there existed osteoarthritic changes of the left knee but concluded that these changes were not related to the accident. However, the trial judge chose to place greater reliance and credibility on the testimony of Dr. A. J. Hackett who testified that the osteoarthritic condition was not a “result” of the trauma but was “aggravated” by the trauma.
Dr. Hackett also stated plaintiff suffered pain in the cervical area, tenderness of the lumbar muscles causing muscle spasm in the lumbosacral and cervical area. According to Dr. Hackett, Reverend Breckenridge was seen by him four days (April 20, 1971) after emergency treatment was administered at Ochsner Foundation Hospital on the day of the accident. Plaintiff was seen a total of six occasions during the months of May, June and July, 1971, and was discharged to return to his duties as a pastor on September 17, 1971. Dr. Hackett’s diagnosis was muscle spasm of the lumbar and cervical area, contusions of the abdomen and aggravation of an os-teoarthritic condition.
Reverend Breckenridge was seen by Dr. Claude S. Williams on May 23, 1973. In a report dated May 24, introduced into evidence, Dr. Williams stated he found swelling of the left knee and some diffuse soreness in the knee area. According to Dr. Williams, his findings were compatible with osteoarthritis of the left knee for which he recommended anti-inflammatory drugs, whirlpool treatment and strengthening exercises. Dr. Williams recommended also that the plaintiff limit his activities by avoiding excessive stooping, squatting and stair climbing. Plaintiff received 27 physical therapy and heat treatments between April and September, 1971, and wore a corset prescribed by Dr. Hackett. Drugs for pain were also prescribed.
Dr. Hackett’s testimony is not clear whether or not he was referring to the back or the knee when he testified about an osteoarthritic condition. However, when Dr. Hackett’s testimony is considered with that of Dr. Dabezies and Dr. Williams, it is just as reasonable, from a trial court’s view, that Dr. Hackett was referring to an osteoarthritic condition of the knee as it is reasonable, from an appellate view, that Dr. Hackett was referring to an osteoarthritic condition of the back. In such instance, the award should not be disturbed.
Under the circumstances, I would affirm the judgment. Accordingly, I dissent.